## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARIO PETERSON,                      CIVIL CASE NO. 04-CV-72299-DT
                                     HONORABLE NANCY G. EDMUNDS
                                     UNITED STATES DISTRICT JUDGE

       Petitioner,

v.

MILLICENT WARREN,

       Respondent,

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

Mario Peterson, ("Petitioner"), presently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction of second-degree murder, M.C.L.A. 750.317; and being a third felony habitual offender, M.C.L.A. 769.11. For the reasons stated above, the petition for writ of habeas corpus shall be denied.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

1

Defendant's conviction arises from his involvement in the drive-by shooting of LaWranza Robertson. Codefendant William Martin shot Robertson from the rear side window of a passing car in which defendant was the driver, and another codefendant, Shawn Lundy, was a front-seat passenger.

The evidence against defendant consisted primarily of the testimony of Steven Brown, who was with Robertson, and defendant's statement to the police. Brown testified that he was walking Robertson home from a barbecue shortly after midnight on June 6, 1999, when a station wagon approached and slowed down at the intersection of Holmur and Chalfonte in Detroit. Although he did not recognize the car, Brown recognized the occupants as defendant, Martin and Lundy. As the car slowed down, Martin leaned out the back window and started shooting with a black handgun. Robertson was struck in the chest and died.

The defense theory was, in essence, that this was a tough neighborhood, that Brown and his associates wanted to control drug sales in the neighborhood, that Brown shot at the station wagon as part of a turf battle, and that Martin shot back in self-defense (mistakenly hitting Robertson). Brown denied being armed. Although a witness heard two sets of gunfire, all bullet shells found at the scene were fired from Martin's weapon.

Defendant, Lundy, and Martin were tried jointly-defendant and Lundy before one jury, and Martin before a separate jury. Defendant's jury heard custodial statements given by Lundy as well as himself, but was instructed that Lundy's statement could not be considered in determining his guilt, nor could his statement be considered in determining Lundy's guilt. In his statement, defendant said he, his brother and Martin were driving around earlier in the evening and heard approximately twenty-two gunshots. They went back to defendant's house; Martin left and returned later in a station wagon. Martin asked defendant and Lundy if they wanted to ride around, and they got in with him. When they were riding around, "Martin said he was wondering who was shooting at us," but defendant did not know Martin had a gun until they were riding down Holmur. Martin had a black automatic pistol and fired seven or eight shots without saying anything. Defendant said he asked Martin who he was shooting at because he did not see anyone on the street. Defendant told the police he had a dispute with Patrick Bryant about whether he (defendant) was selling drugs in

2

Bryant's territory (the shooting occurred near Bryant's home).  Also, a month earlier, Bryant had "sucker-punched" defendant, but defendant said he had not seen Bryant since that time.

The prosecutor generally characterized the shooting as a "plan" to "hunt" down Bryant or his associates.  Defendant was asked about a plan, and responded (in his statement) as follows:

> Q. Did you, Shawn and Martin plan to hunt down Patrick, Dwayne, Steve and little Mo?
> A. Martin said if that's who was outside, that's who we were going to get.
> * * *
> Q. Did you, Martin, and Shawn make plans before the shooting?
> A. We said that we were going to ride around and look for whoever was outside.

*People v. Peterson,* 226748, Slip. Op. at * 1-2 (Mich.Ct.App. November 19, 2002).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 468 Mich. 927; 664 N.W. 2d 217 (2003)(Cavanagh, Kelly, and Markman, JJ. would order the prosecution to show cause why the defendant's conviction should not be reversed on the ground that the statement of a non-testifying co-defendant was presented before the jury).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I.  Conviction obtained by use of coerced confession.

II.  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure and unlawful arrest.

III.  Denial of Sixth Amendment and state constitutional rights to

3

confront the witness against me.

IV.  Juror misconduct.

V.  Sufficiency of Evidence.

VI.  Habitual Offender Sentence.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of

state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

4

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A. Claim # 1.  The coerced confession claim.**

Petitioner first contends that his confession to the police was involuntarily made.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F. 2d 454, 459 (6th Cir. 1988).

The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 108-11 (1995). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include: 1) Police Coercion (a "crucial

5

element"); 2) Length of Interrogation; 3) Location of Interrogation; 4) Continuity of Interrogation; 5) Suspect's Maturity; 6) Suspect's Education; 7) Suspect's Physical Condition & Mental Health; and 8) Whether Suspect Was Advised of *Miranda* Rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).  All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568 (1961).  Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly*, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was obtained involuntarily rests with the petitioner. *Boles v. Foltz*, 816 F. 2d 1132, 1136 (6th Cir.1987).  Voluntariness need only be established by a preponderance of the evidence. *Id.*

The primary contention raised by petitioner in his appeal with the Michigan Court of Appeals was that his statement was involuntary because of the delay between his arrest on June 6, 1999 and his arraignment before a magistrate on June 10, 1999.  Any unnecessary delay in having a defendant arraigned before a magistrate or other judicial officer is insufficient, in and of itself, to justify the suppression of an otherwise voluntary confession made during the period of the prearrangment delay; instead, delay is only one of several relevant factors to be considered in determining the voluntariness of a criminal defendant's statements. *See United States v. Christopher,* 956 F. 2d 536, 538 (6th Cir. 1991).

6

In the present case, Petitioner alleges that his confession was involuntary because of the prearraignment delay, but has provided no other facts to this Court which would lead it to believe that the confession was involuntarily given. In this case, based on a review of the record, the totality of circumstances indicate that petitioner's confession was voluntary, in spite of the prearraigment delay, because there is no allegation that petitioner was not advised of his *Miranda* warnings, and there is no evidence of intimidating police conduct, that the police interview was coercive, or that petitioner was otherwise harassed or mistreated. *Christopher,* 956 F. 2d at 539; *See also United States v. Van Metre,* 150 F. 3d 339, 348 (4th Cir. 1998).

Although petitioner alleges that the police refused to allow him to use the telephone, that fact alone would not render his confession involuntary, in light of the other circumstances in this case. *See Stokley v. State of Md.,* 301 F. Supp. 653, 660 (D. Md. 1969).

Petitioner further claims that the police told him and his co-defendant that they knew that the two men did not do the shooting and that they "really" needed to tell the police what happened if petitioner and his co-defendant wanted to get out of there or they would be spending the rest of their lives in jail.

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence.

7

*Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1).
Subsidiary factual questions in determining the voluntariness of a statement to
police, such as whether the police engaged in intimidation tactics alleged by a
habeas petitioner, are entitled to the presumption of correctness accorded to
state court findings of fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  In this
case, the state trial court's finding that police officers made no promises or
threats to induce an incriminating statement from petitioner, so that his
statement was voluntarily made, is entitled to the presumption of correctness,
because petitioner has failed to present clear and convincing evidence to rebut
this presumption. *Pritchett v. Pitcher*, 117 F. 3d 959, 963-64 (6th Cir. 1997).
Because petitioner has failed to present clear and convincing evidence to rebut
this presumption, he is not entitled to challenge the trial court's credibility
determination concerning the voluntariness of his confession on habeas review.
*See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 760 (E.D. Mich. 2005).

Petitioner has failed to establish that his confession was involuntary, and
thus, his confession was admissible at his murder trial, in light of the fact that
petitioner has not shown that police threatened or harmed him physically or
coerced or browbeat him psychologically, or that his confession was induced by
false promises of leniency. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 836
(E.D. Mich. 2003).  This Court concludes that the Michigan Court of Appeals
decision rejecting petitioner's coerced confession claim is a reasonable

8

application of federal constitutional law.  Therefore, this claim lacks merit and shall be denied. *Id.*

### B.  Claim # 2.  The Fourth Amendment claim.

Petitioner contends that he was illegally arrested by the police without a warrant or probable cause.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-495 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003).

Michigan has a proper procedure for criminal defendants to litigate their Fourth Amendment claims. *See e.g. People v. Ferguson,* 376 Mich. 90, 93-94; 135 N.W. 2d 357 (1965); *People v. Harris,* 95 Mich. App. 507, 509; 291 N.W. 2d 97 (1980).  Petitioner does not allege that the State of Michigan did not offer him an opportunity to challenge the legality of his arrest in the state courts.

9

Petitioner is therefore not entitled to federal habeas review of this part of his Fourth Amendment claim, when he failed to avail himself of the available state court procedures for seeking suppression of any evidence obtained as a result of the allegedly illegal arrest. *See Crawford v. Artuz,* 165 F. Supp. 2d 627, 637 (S.D.N.Y. 2001).

### C.  Claim # 3.  The Confrontation Clause claim.

Petitioner next contends that his rights under the Confrontation Clause were violated when co-defendant Lundy's statement to the police was admitted into evidence at their joint trial.  The Michigan Court of Appeals concluded that petitioner's Sixth Amendment rights were violated, but concluded that the error was harmless, in light of the fact that the details of Lundy's statement to the police concerning the crime were similar to petitioner's own confession to the police. *Peterson,* Slip. Op. at * 3-5.

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-28 (1968).  This rule has been extended even to cases in which the defendant's own interlocking confession was admitted against him at trial. *Cruz v. New York*, 481 U.S. 186, 193 (1987).  However, a defendant's own confession may be considered on review of a conviction in assessing whether any

10

Confrontation Clause violation was harmless error. *Id.* at 193-94; *See also Harrington v. California*, 395 U.S. 250 (1969).

In determining whether a *Bruton* violation is harmless, a reviewing court must decide "'whether the 'minds of an average jury'" would have found the State's case against a defendant "'significantly less persuasive'" had the incriminating portion of the co-defendant's statement been excluded. *Stanford v. Parker,* 266 F. 3d 442, 456 (6th Cir. 2001)(*citing Hodges v. Rose*, 570 F. 2d 643, (6th Cir. 1978)(*quoting Schneble v. Florida*, 405 U.S. 427, 432 (1972)). "An erroneous admission of a non-testifying co-defendant's confession can constitute harmless error where the defendant claiming a *Bruton* violation confessed to full participation in the crimes." *Stanford,* 266 F. 3d at 456. In determining whether a *Bruton* violation was harmless, the reviewing court must therefore consider the nature and content of the defendant's own statement, in particular, to see whether it satisfactorily explains his part in the crime without reference to the co-defendant's statements. *Samuels v. Mann*, 13 F. 3d 522, 526-27 (2nd Cir. 1993). Also relevant is the extent to which the defendant's statement is corroborated or contradicted by other objective evidence. *Id.* at 527.

In addition, "[W]hen a state court addresses a harmless-error claim on direct review, the clearly established federal law that it must apply is the *Chapman* standard." *Eddleman v. McKee*, 471 F. 3d 576, 582 (6th Cir. 2006). In *Chapman v. California*, 386 U.S. 18 (1967), the Supreme Court held that, "before

11

a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24. Therefore, the "AEDPA's plain language" requires a federal court to deny a habeas petition unless a state court's determination of harmless error was contrary to, or an unreasonable application of, the principle that an error must be harmless beyond a reasonable doubt. *Eddleman,* 471 F. 3d at 582.  In other words, on federal habeas review of a state appellate court's finding of harmless error, the appropriate standard of review is the *Chapman* standard plus the deference owed to state courts under 28 U.S.C. § 2254(d). *Eddleman*, 471 F.3d at 583, 585.

This Court concludes that the Michigan Court of Appeals' conclusion that admission of Lundy's statement was harmless error beyond a reasonable doubt was a reasonable application of the *Chapman* standard.  Any error in the admission of Lundy's statement was harmless, in light of the fact that petitioner confessed to a full participation as an aider and abettor to the murder. *Stanford,* 266 F. 3d at 542.  Petitioner told the police that he, his brother, and Martin had been riding around earlier in the evening when they heard approximately 22 gunshots.  The men returned to petitioner's house, with Martin leaving and returning later in a station wagon.  Petitioner and Lundy got into the car with Martin.  Petitioner admitted that he drove the car because he had a license. While the men were driving around, Martin "said he was wondering who was

shooting at us." Petitioner told the police that he did not know that Martin had a gun until the men drove down Holmur Street. Martin had a black automatic pistol and fired seven or eight shots without saying anything. Petitioner then asked Martin who he was shooting at, because petitioner did not see anyone on the street. Petitioner told the police that he had a dispute with Patrick Bryant about petitioner selling drugs in Bryant's territory and further informed the police that he had a "beef" with Bryant because Bryant had "sucker-punched" petitioner a month earlier.

Significantly, petitioner was asked the following by the police:

Q. Did you, Shawn and Martin plan to hunt down Patrick, Dwayne, Steve and little Mo?
A. Martin said if that's who was outside, that's who we were going to get.
                                        * * *
Q. Did you, Martin, and Shawn make plans before the shooting?
A. We said that we were going to ride around and look for whoever was outside.

In the present case, petitioner fully confessed to his participation in the murder as an aider and abettor. In addition to petitioner's confession, Steven Brown testified that petitioner was driving the car used during the shooting and that the car slowed down at the intersection prior to the shooting. As discussed when addressing petitioner's sufficiency of evidence claim, *infra,* this slowing down by petitioner supports an inference that petitioner slowed the vehicle down to enable Martin to shoot at Brown.

13

Petitioner's own statement, as well as Brown's testimony, provided compelling evidence that petitioner aided and abetted in the murder of the victim. Accordingly, Lundy's statement was merely cumulative to the other evidence and its admission at trial was harmless. *See Jackson v. Renico,* 320 F. Supp. 2d 597, 606 (E.D. Mich. 2004); *See also Miller v. Miller*, 784 F. Supp. 390, 398 (E.D. Mich. 1992)(error in admitting co-defendant's statement was harmless, where portions of the co-defendant's statement was either substantiated by petitioner's own statements or other evidence submitted at trial).  At a minimum, this Court cannot state that "the 'minds of an average jury' " would have found the prosecution's case against petitioner " 'significantly less persuasive'" had the incriminating portion of the co-defendant's statement been excluded. *Stanford,* 266 F. 3d at 456.  Therefore, this Court concludes that the Michigan Court of Appeals reasonably concluded that the admission of Lundy's statements at trial, while a violation of *Bruton,* was harmless beyond a reasonable doubt.  Petitioner is not entitled to habeas relief on his third claim.

**D.  Claim # 4.  The juror misconduct claim.**

Petitioner next contends that he was deprived of a fair trial because of juror misconduct, where one of the jurors, who later became the jury foreperson, expressed some frustration about the delays that were taking place with the trial. Petitioner claims that this indicates that the jury ignored the trial court's instructions and prematurely commenced deliberations.  The trial court denied

14

petitioner's motion for mistrial.  The Michigan Court of Appeals likewise rejected

petitioner's claim, finding that there was no evidence that the jury had already

selected a foreperson and prematurely begun deliberations.  The Michigan Court

of Appeals further concluded that there was no evidence that the jury was biased

against petitioner for the delays, particularly where the delays had been caused

by the prosecutor's illness and the procedures inherent in selecting multiple

juries. *Peterson,* Slip. Op. at * 6.

  The standard of review on habeas does not permit a court to substitute its

view of possible juror bias for the state court's view; a habeas court may only

overturn the state court's findings of juror impartiality if those findings were

manifestly erroneous. *DeLisle v Rivers*, 161 F. 3d 370, 382 (6th Cir. 1998).

  In the present case, petitioner has presented no evidence to establish that

the jurors in his case were biased against him or had prematurely commenced

deliberations.  The juror's comments merely showed that the jurors in petitioner's

case were becoming frustrated by the many delays in the case.  This is

insufficient to establish juror bias or misconduct. *See Earle v. Runnels,* 176

Fed.Appx. 883, 886 (9th Cir. 2006)(trial court's alleged failure to conduct

adequate inquiry into potential juror misconduct arising from premature

deliberations did not deprive defendant of his right to impartial jury; state court

did not unreasonably apply clearly established federal law in concluding that

jurors' misconduct was of a mild nature and did not concern defendant's guilt or

15

innocence or evidence presented, but was rather an expression of exasperation

with the way the attorneys were conducting their questioning); *U.S. v.*

*Panebianco*, 543 F. 2d 447, 457 (2nd Cir. 1976)(trial court did not abuse

discretion when he refused to question two jurors to ascertain whether they had

been discussing case with other jurors or had formed a premature opinion of

guilt, where jurors who made comments during cross-examination of

government witness were only exhibiting impatience with questioning by defense

counsel which had been admittedly repetitious at times).

  The Court also rejects petitioner's claim that the trial court judge was

biased against him. [1] The Due Process Clause of the Fourteenth Amendment

requires a fair trial in a fair tribunal before a judge with no actual bias against the

defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520

U.S. 899, 904-05 (1997).  However, to state a claim that a judge is biased, a

defendant must show either actual bias or the appearance of bias creating a

conclusive presumption of actual bias. *United States v. Lowe*, 106 F. 3d 1498,

1504 (6th Cir. 1997).  In reviewing a judicial bias claim, a federal habeas court

---

  [1]  It is not clear that petitioner ever presented his judicial bias claim to the Michigan courts. However, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c).  Because petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

should employ the initial presumption that the assigned trial judge properly

discharged his or her official duties. *See Johnson v. Warren,* 344 F. Supp. 2d

1081, 1093 (E.D. Mich. 2004).

Petitioner contends that the trial court judge's denial of his motion for a

mistrial establishes that he was biased against him.  Adverse rulings are not

themselves sufficient to establish bias or prejudice which will disqualify a judge.

*See Hence v. Smith,* 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999); *See also Vliet*

*v. Renico,* 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002).

Petitioner further claims that the trial court judge was also biased against

him, because petitioner was already on probation to him for another offense.

The mere fact that petitioner was already on probation to the trial court judge

would not disqualify that judge from presiding over petitioner's trial, in the

absence of any showing of personal bias or prejudice on the part of that judge.

*See U.S. v. Scaccia,* 514 F. Supp. 1353, 1356-57 (N.D.N.Y. 1981).

Because petitioner has not offered and the Court does not find any

evidence that the trial judge in this case was actually biased against him, his

judicial disqualification claim is without merit. *Johnson,* 344 F. Supp. 2d at 1093.

### E.  Claim # 5. The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to convict him

of second-degree murder under an aiding and abetting theory.

A habeas court reviews claims that the evidence at trial was insufficient for

17

a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002).  The scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002). Circumstantial evidence from which a reasonable inference of a habeas petitioner's guilt beyond a reasonable doubt may be drawn is constitutionally sufficient to sustain a conviction. *Crenshaw v. Renico,* 261 F. Supp. 2d at 832. Finally, a habeas court does not substitute its own judgment for that of the finder of fact. *Id.*

Under Michigan law, conviction of second-degree murder requires proof of: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without justification or excuse. *Kelley v. Jackson,* 353 F. Supp. 2d 887, 891 (E.D. Mich. 2005)(citing *People v. Goecke*, 457 Mich. 442, 463-64; 579 N.W.2d 868

18

(1998)).  To prove malice, the prosecution must establish that the defendant has

the intent to kill or do great bodily harm, or has created and disregarded a very

high risk of death. *Id.*  Malice for second-degree murder can be inferred from

evidence that the defendant intentionally set in motion a force likely to cause

death or great bodily harm. *People v. Djordjevic*, 230 Mich. App. 459, 462; 584

N.W.2d 610 (1998); *See also Hill v. Hofbauer,* 195 F. Supp. 2d 871, 885 (E.D.

Mich. 2001).  The offense of second-degree murder "does not require an actual

intent to harm or kill, but only the intent to do an act that is in obvious disregard

of life-endangering consequences." *Long v. Stovall,* 450 F. Supp. 2d 746, 753

(E.D. Mich. 2006)(*quoting People v. Mayhew*, 236 Mich. App. 112, 125; 600 N.

W. 2d 370 (1999)).

To support a finding under Michigan law that a defendant aided and

abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some
> other person;
> 2. the defendant performed acts or gave encouragement that
> assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had
> knowledge that the principal intended its commission at the time he
> gave aid and encouragement.

*Long,* 450 F. Supp. 2d at 753 (citing *People v. Carines*, 460 Mich. 750,

757-58; 597 N.W. 2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the

accused must take some conscious action designed to make the criminal

venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981).  Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995).  The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992).  The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *People v. Turner,* 213 Mich. App. at 568-69.

In the present case, there was sufficient evidence from which the jury could infer that petitioner aided and abetted in the murder.  Petitioner told the

20

police that there was a plan between himself, Martin, and Lundy to "get" whoever was outside.  Although petitioner denied knowing that Martin had a gun when they began driving, he admittedly learned that Martin had a gun while driving down Holmur Street.  Petitioner told the police that while the men were riding around, there was talk about who had been shooting at them.  Steven Brown testified that petitioner slowed down at the intersection, which would support an inference that he did this to enable Martin to shoot at Brown.  After the shooting, petitioner asked Martin why he shot the gun, in light of the fact that petitioner didn't see anyone on the street.  This evidence would be consistent with the prosecutor's theory that the men were hunting for someone.  There was also evidence that petitioner had prior altercations with Bryant, one of the men whom petitioner and his co-defendants were hunting for that evening.  The Michigan Court of Appeals' determination that there was sufficient evidence to convict petitioner of second-degree murder was an objectively reasonable application of clearly established federal law, where there was compelling evidence that petitioner aided and abetted this crime. *Long,* 450 F. Supp. 2d at 754.

Petitioner further contends that the prosecution failed to prove the cause of death beyond a reasonable doubt.  However, the medical examiner testified at trial that the victim died from a gunshot wound to her chest.  In Michigan, the prosecution does not need to prove that the defendant's conduct was "the" proximate cause of death, but only "a" proximate cause of death. *See Holloway*

21

*v. Jones,* 166 F. Supp. 2d 1185, 1193 (E.D. Mich. 2001); *Elliott v. Jones,* 2000 WL 156815, * 4 (E.D. Mich. January 6, 2000)(both citing to *People v. Tims*, 449 Mich. 83, 95-96; 534 N.W. 2d 675 (1995)).  The medical examiner's testimony that the victim died from a gunshot wound to her chest was sufficient to prove the cause of death.

Petitioner also claims that the evidence was insufficient to convict him of second-degree murder, because the police evidence technician failed to give Steven Brown a gunshot residue test, a car with gunshot damage was not seized to retrieve a slug, and the house where the victim had been had not been searched to find a discarded weapon.  Petitioner appears to argue that this evidence would have buttressed his claim that Martin shot the victim in self-defense. [2]

In evaluating a habeas corpus petitioner's insufficient evidence claim, it is not necessary for the prosecution to rule out every hypothesis except that of guilt beyond a reasonable doubt, and a reviewing court need not be convinced of petitioner's guilt beyond reasonable doubt. *See Walker v. Russell,* 57 F. 3d 472, 475 (6th Cir. 1995).  Although a witness testified that he heard two sets of gunfire, all of the bullet shells found at the scene were fired from Martin's

---

[2] It is not clear that petitioner ever presented this portion of his sufficiency of evidence claim to the Michigan courts.  However, because this portion of petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim. *Welch*, 49 F. Supp. 2d at 998.

22

weapon. *Peterson,* Slip. Op. at * 1.  The mere fact that a witness claimed to hear two sets of gunfire does not establish that more than one firearm was used during the shooting or that Brown or someone else fired a weapon at petitioner's car. Petitioner's speculative claim that this missing evidence would have established that Brown fired a weapon at petitioner and the co-defendants "cannot be factored into the equation when reviewing a claim of insufficient evidence." *Cox v. Herbert,* 420 F. Supp. 2d 144, 162 (W.D.N.Y. 2006)(sufficient evidence supported petitioner's conviction for first degree assault, even if bullet found in victim's leg was not turned in to ballistics expert for testing, where victim testified that defendant was only individual shooting into crowd on dance floor at club, and victim's testimony was corroborated by numerous other witnesses). Petitioner is not entitled to habeas relief on his fifth claim.

**Claim # 6.  The sentencing claims.**

Petitioner lastly raises a number of claims regarding his sentence.

Petitioner first claims that the trial court imposed a 25 to 50 year sentence, which was at the high end of his sentencing guidelines range, after relying on mistakes contained in his pre-sentence report.

A criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948).  In order to prevail on a claim that a trial court relied on inaccurate

23

information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that it was materially false. *Collins v. Buchkoe*, 493 F. 2d 343, 345-46 (6th Cir. 1974); *Welch*, 49 F. Supp. 2d at 1007.  Where a petitioner fails to demonstrate in his petition that the sentencing court relied upon materially false information in imposing sentence, the claim is without merit. *See Thomas v. Foltz*, 654 F. Supp. 105, 108 (E.D. Mich. 1987).

In this case, petitioner does not specify the nature of the inaccurate information that he claims was used by the sentencing court used in imposing sentence.  Petitioner's unsupported claim that the trial court used incorrect information in his pre-sentence report to fashion his sentence is an insufficient basis for habeas relief. *See Walker v. Warden Winn Correctional Center,* 191 Fed.Appx. 328, 330 (5th Cir. 2006); *cert. den. sub nom Walker v. Wilkinson*, ---- S. Ct.----; 2007 WL 135771 (U.S. January 22, 2007).

Petitioner also challenges the procedures that were used by the court in the application of Michigan's habitual offender statute.  A state court's alleged violation of its own procedures for establishing a habeas petitioner's status as an habitual offender is not a ground for habeas relief. *See Reed v. Clark,* 984 F. 2d 209, 210 (7th Cir. 1993); *Tolbert v. LeCureaux,* 811 F.Supp. 1237, 1240-41 (E.D. Mich. 1993).

Petitioner's claim that he was sentenced at the high end of his sentencing

24

guidelines range would not state a claim either.  Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  Moreover, in Michigan, sentences within a correctly scored guidelines range are presumptively proportionate. *Hastings v. Yukins,* 194 F. Supp. 2d 659, 673-674 (E.D. Mich. 2002)(*citing to People v. Bailey*, 218 Mich. App. 645, 647; 554 N. W. 2d 391 (1996)).

The maximum penalty for second-degree murder in Michigan is life or any term of years. M.C.L.A. 750.317.  The maximum sentence for being a third felony habitual offender is double the maximum sentence of the underlying felony. M.C.L.A. 769.11.  Because petitioner's sentence of twenty five to fifty years was within the statutory maximum for second-degree murder and being a third felony habitual offender, petitioner is not entitled to habeas relief on his sentencing claim. *See Stephenson v. Renico,* 280 F. Supp. 2d 661, 669 (E.D. Mich. 2003).

## IV. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  February 13, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 13, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

26